881 So.2d 1246 (2004)
NEW ORLEANS REDEVELOPMENT AUTHORITY
v.
Elmer LUCAS and his succession and heirs if deceased.
No. 2002-CA-2344.
Court of Appeal of Louisiana, Fourth Circuit.
August 25, 2004.
Rehearing Denied October 6, 2004.
*1247 Christopher Gobert, Cade, Collins & Gobert, New Orleans, LA, for Plaintiff/Appellee.
James E. Uschold, James E. Uschold, PLC, New Orleans, LA, for Intervenor/Appellant, Wesley Alden, M.D., d/b/a Crescent City Property Services.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY).
PATRICIA RIVET MURRAY, Judge.
In this nullity action, the plaintiff, Wesley Alden, M.D., d/b/a Crescent City Property Services ("Dr. Alden"), seeks to annul an expropriation judgment rendered in favor of the defendant, New Orleans Redevelopment Authority ("NORA"), a state agency with statutory authority to expropriate blighted property. This is Dr. Alden's second appeal. On his first appeal, we rejected his argument that he was an indispensable party to NORA's expropriation action. Reasoning that Dr. Alden "had no legally protected interest in the property because he failed to obtain the tax deed and timely record it prior to the judgment of expropriation," we affirmed the expropriation judgment. New Orleans Redevelopment Authority v. Lucas, XXXX-XXXX (La.App. 4 Cir. 2/12/03), 838 So.2d 946 (unpub.), writ denied, XXXX-XXXX (La.6/27/03), 847 So.2d 1278 ("Lucas I"). Based on La. C.C.P. art. 2005 and the law of the case doctrine, we decline to reconsider Dr. Alden's arguments raised on this appeal, having considered and rejected those same arguments on his prior appeal. We, therefore, affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The facts of this case are undisputed. Since June 16, 1995, Elmer Lucas has been the record owner of the property located at 5019-21 LaSalle Street in New Orleans (the "Property"). On October 17, 2000, the Administrative Adjudication Bureau of the New Orleans Health Department rendered judgment adjudicating *1248 the Property blighted and eligible for expropriation by NORA.
As statutorily authorized, NORA identified a prospective purchaser for the Property, Velma Aiola. Ms. Aiola commissioned the required appraisals for which she paid $425. The appraisers valued the Property at $7,000. On May 15, 2001, NORA and Ms. Aiola entered into an Agreement to Purchase and Sell the Property. Pursuant to the Agreement, Ms. Aiola agreed to purchase the Property at its appraised value and to renovate it within 270 days of her purchase. The Agreement, however, was conditioned on NORA's expropriation of the Property from its record owner. Ms. Aiola tendered the appraised value, $7,000, for deposit into the registry of the court in the impending expropriation proceeding.
On November 16, 2001, Dr. Alden purchased the Property at a tax sale from the City of New Orleans, paying $611.39 for delinquent 1999 and 2000 taxes.[1] However, the City did not execute a tax sale deed to Dr. Alden until March 22, 2002, and Dr. Alden did not record the tax sale deed until March 25, 2002.
On November 26, 2001, NORA filed a petition to expropriate the Property. NORA named as defendants the record owner of the property, Mr. Lucas, or "his succession, whether open or unopened, and any unknown heirs, if he should be deceased." Because Mr. Lucas' whereabouts were unknown, NORA requested a curator ad hoc be appointed to represent him. Dr. Alden was neither named as a defendant, nor served with notice of the expropriation action. Among Mr. Lucas' creditors who were served with notice was the City, which claimed $3,922.20 in delinquent taxes and liens.[2] The trial was set for February 7, 2002.
On December 3, 2001, NORA filed a notice of lis pendens in the public records pursuant to La. C.C.P. art. 3752.[3]
On December 5, 2001, Dr. Alden informed NORA, by letter, that he had purchased the blighted Property at tax sale and that he had begun refurbishing it.[4] On December 10, 2001, NORA responded; it advised Dr. Alden, by letter, that it had inspected the Property and another property Dr. Alden had purchased at tax sale *1249 and had found no work in progress at either address. NORA further advised Dr. Alden that it would "continue its expropriation proceedings until there is evidence of work in progress and will not remove the subject properties from its inventory until they are completely renovated."[5]
On February 6, 2002, the day before trial, Dr. Alden alleges that NORA's attorney telephoned him and first advised him that the expropriation petition had been filed. At the expropriation trial the next day, Dr. Alden, NORA, the City, and Mr. Lucas were represented by counsel.[6] Dr. Alden's attorney requested a continuance to allow him to research the legal issues regarding his client's rights and obligations. Both NORA's attorney and Mr. Lucas' curator opposed that request. Denying that request, the trial court stated: "The error is, your sale was not recorded. And I think there is a remedy for that and a recourse. I truly don't know who the recourse is against, but it sounds to me that there is a serious error that needs to be corrected and I will proceed with the expropriation."
At trial, the sole witness was NORA's representative, Madeliene Leon. She testified that she inspected the Property on February 5, 2002, and found the Property was still blighted. Particularly, she testified:
"The property still remained, inhabitable [sic]. There is no current utilities, no electricity or water. There is shrubbery growing over the roof. There is some  look like a refrigerator or stove on the outside. And there was no work in progress at that time."
In response to questioning by Dr. Alden's attorney, Ms. Leon testified that on the day before trial she was informed that in November 2001 the City had sold the Property at tax sale to Dr. Alden. Also at trial, NORA and Mr. Lucas' curator introduced exhibits. At the close of the one-day trial, the trial court orally rendered *1250 judgment of expropriation in NORA's favor.
On February 15, 2002, NORA sold the property to Ms. Aiola.[7]
On March 15, 2002, the trial court signed a written expropriation judgment, which, as statutorily authorized by both La. R.S. 19:11 and NORA's enabling legislation, transferred title of the Property to NORA free and clear of any taxes, liens, mortgages, and encumbrances.
On March 19, 2002, Dr. Alden filed multiple exceptions (insufficiency of citation and service, prematurity, want of amicable demand, lack of procedural capacity, res judicata, nonjoinder of a party, no cause of action, and no right of action).
On April 17, 2002, Dr. Alden filed a motion for new trial. On April 19, 2002, the trial court denied the motion for new trial.[8] On May 14, 2002, Dr. Alden filed a third party appeal pursuant to La. C.C.P. art. 2086.
On June 3, 2002, Dr. Alden filed a "Petition for Intervention, Nullity, Permanent Injunction and Damages" (the "Nullity Petition"), naming NORA as a defendant and citing La. C.C.P. art. 2005 as authority for filing of a nullity action during the pendency of an appeal. The petition alleged the expropriation judgment was an absolute nullity because it was rendered against a non-party, Dr. Alden, and a relative nullity based on fraud and ill practices pursuant to La. C.C.P. art. 2004. Also on June 3, 2003, the trial court signed an order of intervention, granting Dr. Alden's request for leave to file the Nullity Petition.
On June 11, 2002, Dr. Alden filed a motion for partial summary judgment and motion for expedited hearing, seeking a declaration that the expropriation judgment was an absolute nullity.
On June 21, 2002, NORA filed exceptions of no cause and no right of action, contending that Dr. Alden had no legal interest in the Property when the expropriation action was filed or when the judgment was rendered.
On July 1, 2002, Dr. Alden filed a rule to show cause why the expropriation judgment should not be annulled and requested an expedited hearing. In support of that request, Dr. Alden cited the principle that an absolute nullity may be attacked at any time and by any method.
On July 12, 2002, this court granted Dr. Alden's motion for expedited appeal. Before we rendered our decision in Lucas I, the trial court, on August 16, 2002, held a hearing on NORA's exceptions and Dr. Alden's rule to show cause why the expropriation judgment should not be annulled. On August 26, 2002, the trial court rendered judgment sustaining NORA's exceptions, denying Dr. Alden's rule to show cause, and dismissing his nullity action. The instant appeal is from that August 26, 2003, judgment.
On February 12, 2003, this court rendered its decision on the prior appeal in Lucas I. On that appeal, we framed the dispositive issue to be whether Dr. Alden was an indispensable party to the expropriation action. Finding he was not, we reasoned that he had no legally protected interest in the Property because he failed to obtain and to record the tax sale deed before the expropriation judgment was rendered. Accordingly, in Lucas I, we affirmed the expropriation judgment. On March 14, 2003, we denied Dr. Alden's *1251 application for rehearing. On June 27, 2003, the Louisiana Supreme Court denied his application for certiorari.
As noted, the instant appeal is from the August 26, 2002 judgment, sustaining NORA's exceptions, denying Dr. Alden's rule to show cause, and dismissing his nullity action.

ANALYSIS
Dr. Alden's arguments on the instant appeal are premised on the trial court's inclusion of the following declaration regarding his unrecorded tax sale in the expropriation judgment; to wit:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that without advance payment and thirty (30) days subsequent to the rendition of the Judgment of Expropriation, the unrecorded tax sale to W. Wesley Alden d/b/a Crescent City Property Redevelopment, be and it is voided, cancelled and set aside ordering the redemption thereof in favor of the New Orleans Redevelopment Authority, or if in the event that some or all of the amount due for the redemption cannot be satisfied from the deposit in the Court's registry then the redemption thereof is unnecessary, the tax sale cancelled and voided in favor of the New Orleans Redevelopment Authority, and the failure to pay the full amount, or any part thereof shall not create a cloud on the title of the property expropriated herein.
Dr. Alden's primary argument is that the trial court's inclusion of the above declaration in the judgment coupled with NORA's failure to name him as a party in the underlying expropriation proceeding renders the judgment an absolute nullity. NORA counters that the inclusion of the above declaration does not deprive Dr. Alden of any legal interest in the Property because at the time the judgment was rendered he had no such interest. We agree.
Even without the above declaration, the rendering of the expropriation judgment removed any cloud on the Property resulting from Dr. Alden's unrecorded tax sale. As noted, pursuant to La. R.S. 19:11 and NORA's enabling legislation, title to the expropriated property passes to the expropriating authority (NORA) free and clear of all encumbrances. A creditor's remedy is against the expropriation proceeds deposited in the registry of the court. Pursuant to La. R.S. 9:3191, "[i]f, after the expropriation, any individual pretends that he had rights respecting the thing, either as owner or as creditor, he shall have recourse against the person who received the price."[9]
Nor was NORA required to name Dr. Alden as a party to the underlying expropriation proceedings. "As an expropriating authority, NORA had the right to rely on the public records in determining the identity of the property owners it was required to name as defendants." New Orleans Redevelopment Authority v. Stroughter, XXXX-XXXX, p. 7, n. 3 (La.App. 4 Cir. 12/17/03), 861 So.2d 940, 944-45, *1252 writ denied, XXXX-XXXX (La.4/2/04), 869 So.2d 888 (citing State Dep't of Transportation & Development v. Jacob, 483 So.2d 592, 596 (La.1986)(noting that expropriating authority "need only name those defendants whose interests appear in the public records.")). Given Dr. Alden's tax sale was neither executed nor recorded at the time of the expropriation judgment, he had no right to be named as a party to that proceeding.
In sum, we find that Dr. Alden, as an unrecorded tax sale purchaser at the time the expropriation judgment was rendered, had no legally protected interest in the Property. The inclusion of the above declaration in the judgment neither deprived Dr. Alden of any rights, nor rendered the expropriation judgment an absolute nullity. Rather, the above declaration was mere surplusage that did not affect the validity of the judgment. See Coleman E. Adler & Sons, Inc. v. Waggoner, 538 So.2d 1131, 1133 (La.App. 5th Cir.1989)(construing judgment captioned "default judgment" and including declaration that a preliminary default was being confirmed as "surplusage.")
As noted at the outset, Dr. Alden's arguments on this appeal are substantively the same the arguments he asserted, and we rejected, in Lucas I. Based on La. C.C.P. art. 2005 and the law of the case doctrine, we decline to reconsider our prior decision.

La. C.C.P. Art.2005
The governing statutory provision applicable to this case is La. C.C.P. art. 2005, which provides:
[1] A judgment may be annulled prior to or pending an appeal therefrom, or after the delays for appealing have elapsed.
[2] A judgment affirmed, reversed, amended, or otherwise rendered by an appellate court may be annulled only when the ground for nullity did not appear in the record of appeal or was not considered by the appellate court.
[3] An action of nullity does not affect the right to appeal.
La. C.C.P. art. 2005.
Article 2005[1] codifies an exception to the general rule, under La. C.C.P. art. 2088, that a trial court is divested of jurisdiction when an appeal is filed. It authorizes a litigant to seek direct relief in the trial court to annul a judgment before or pending an appeal; it also authorizes the trial court to annul a judgment during the pendency of an appeal. However, once an appellate court has rendered a judgment on the pending appeal, Article 2005 [2] applies.
In this case, the trial court dismissed the Nullity Petition without reasons on August 26, 2002. During the pendency of Dr. Alden's appeal from the dismissal of the Nullity Petition, this court rendered its opinion in Lucas I, affirming the expropriation judgment. Although Dr. Alden's Nullity Petition correctly cited Article 2005[1] as authorizing the filing of the instant nullity action during the pendency of the prior appeal,[10] Article 2005[2] became *1253 applicable once this court rendered its decision affirming the expropriation judgment.
A similar procedural scenario was presented in Morgan Building and Spas, Inc. v. Cutrer, XXXX-XXXX, p. 7 (La.App. 1 Cir. 7/29/99), 739 So.2d 990. There, as in this case, the nullity action was filed and denied without reasons during the pendency of the appeal of the prior decision. In deciding the subsequent appeal from the denial of the nullity action, the appellate court held that because the appellant previously assigned the same error as he asserted on the second appeal, it was constrained by Article 2005[2] from granting him the relief he requested (i.e., annulling the judgment). Such is the case here.
Article 2005[2] limits a litigant's right to bring a subsequent nullity suit. Weller v. Brown, XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/28/02), 813 So.2d 635, 638. The jurisprudence has construed Article 2005[2] as providing two exclusive, disjunctive grounds for annulling a judgment that an appellate court has rendered; to wit: (i) when the ground for nullity was not in the record of appeal, or (ii) when the ground for nullity was not considered by the appellate court. Meldean's, Inc. v. Rivers, 410 So.2d 837, 839 (La.App. 3rd Cir.1982)(describing grounds as exclusive); Weller, XXXX-XXXX at p. 5, 813 So.2d at 638 (describing grounds as disjunctive). "When a judgment has been affirmed by an appellate court, which considered the moving party's arguments that the judgment should be annulled, the judgment cannot thereafter be annulled." Steven R. Plotkin, Louisiana Civil Procedure, Book II, Commentary to La.C.C.P. art. 2005 (1994) ("Plotkin") emphasis supplied); Posey v. Smith, 453 So.2d 1016 (La.App. 3 Cir.1984) (finding Article 2005[2] precluded appellate court from annulling judgment on second appeal given appellate court's consideration of same ground of nullity on prior appeal).
Nonetheless, when a litigant asserts a claim of fraud or ill practices and establishes that there are facts that did not appear in the record on a prior appeal, we have found Article 2005[2] inapplicable, and remanded to allow the litigant "to amend his petition to include the necessary allegations to state a cause of action in view of the developments which occurred subsequent to the filing of his original petition." Roy v. Griffith, 306 So.2d 85, 89 (La.App. 4th Cir.1974). To justify a remand, however, the new facts must be relevant to the basis of the court's prior decision. "If the fraud or ill practice pertained to a matter which was irrelevant to the basis of the court's decision, the judgment was not `obtained by fraud or ill practice' and cannot be annulled on that ground." 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure, § 12.6 (1999)("Maraist & Lemmon").
Dr. Alden argues that the limitations imposed by Article 2005[2] are not applicable here for three reasons. First, he argues that a claim of absolute nullity, such as he asserts, can be asserted at any time and in any method, and thus is not subject to the limitations in Article 2005[2]. The jurisprudence, however, has not recognized an absolute nullity exception to this provision, and we decline to craft one in this case.
Second, he argues that the facts have changed since the expropriation judgment was rendered. Since then, he has obtained a written tax sale deed and recorded it, giving him a right and a cause of action to establish his title to the *1254 Property in this case. However, these factual events  his subsequent obtaining a tax sale deed and recording it  are not only noted in our prior decision in Lucas I, but also are irrelevant to the validity of the expropriation judgment, which was rendered before these events occurred. Nor has Dr. Alden alleged any ground for nullity that did not appear in the record on his prior appeal, or that was not considered by this court in that appeal.
Although Dr. Alden argues that this court neither considered nor decided in Lucas I the issues he raises on this appeal, the opinion does not support that argument. In Lucas I, we rejected Dr. Alden's argument that the expropriation judgment was an absolute nullity because it was rendered against him as a non-party and because he was an indispensable party who was not joined. Although we analyzed only the indispensable party issue, the opinion held that issue was dispositive of the other issues he raised. In so holding, we implicitly found unpersuasive all the issues Dr. Alden raised.[11]
Dr. Alden's arguments in this appeal are virtually verbatim to the arguments he asserted in his prior appeal, his rehearing application, and his application for certiorari to the Louisiana Supreme Court. Given these circumstances, we conclude that the issues raised in this appeal are the same issues we decided in our prior decision.
In sum, we find neither of the grounds for annulment under Article 2005[2] applies to the judgment at issue in this appeal.

Law of the case doctrine
The law of the case doctrine refers to "(a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case." Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81, 83 (La.1973); Louisiana Land and Exploration Co. v. Verdin, 95-2579, pp. 3-4 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65. This doctrine "may bar redetermination of a question of law or a mixed question of law and fact during the course of a judicial proceeding." Maraist & Lemmon, supra at § 6.7. Thus, the law of the case doctrine is the proper procedural principle, as opposed to res judicata, for describing the relationship between prior judgments by trial and appellate courts rendered within the same case. Posey, 453 So.2d at 1018.
The policy reasons behind this doctrine include: (i) avoiding relitigation of the same issue, (ii) promoting consistency of result in the same litigation, and (iii) promoting efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at *1255 issue. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 330, 256 So.2d 105, 107 (1971).
Unlike the statutory doctrine of res judicata, the jurisprudential doctrine of law of the case is a discretionary guide that will not be applied inflexibly. "Argument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice." Petition of Sewerage and Water Bd., 278 So.2d at 83. In addition to the latter exception for palpable error, the jurisprudence has recognized two other contexts in which this discretionary doctrine will not be applied. First, it will not be applied to "supplant the Code of Civil Procedure provision which clearly permits a reconsideration of the overruling of peremptory exceptions." Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 1094, 262 So.2d 328, 332-33; Landry v. Blaise, Inc., XXXX-XXXX (La.App. 4 Cir. 10/23/02), 829 So.2d 661, 666. Second, it will not be applied when the underlying, operative facts upon which the court's prior decision was based have changed. Morrison v. C.A. Guidry Produce, XXXX-XXXX (La.App. 3 Cir. 10/01/02), 856 So.2d 1222, 1226-27.
Dr. Alden argues that the law of the case doctrine cannot apply in this case for the following six reasons: (1) this action and the expropriation action are not the same action, (2) the parties are not the same, (3) the issues are not identical, (4) the doctrine does not apply to decisions overruling peremptory exceptions, (5) the facts have changed, and (6) there was palpable error and it would be manifestly unjust to apply the doctrine. We briefly address each of these reasons.
First, although this nullity action was filed under the same case number as the expropriation action, Dr. Alden contends that this is a separate action because his prior appeal of the expropriation judgment divested the trial court of jurisdiction. This argument is answered by Article 2005[1], which provides that nullity actions are an exception to the general rule that the trial court is divested of jurisdiction by the filing of an appeal for nullity actions. Moreover, the jurisprudence has construed Article 2005[2] as equivalent to the law of the case doctrine. Posey, 453 So.2d at 1018.
Second, stressing NORA's failure to ever join him as a party to the expropriation action, Dr. Alden argues that the parties are not the same. This argument is belied by both the in rem nature of expropriation proceedings, in general, and by the multiple pleadings Dr. Alden has filed in both the trial court and the appellate court in this case, in particular.
Given the in rem nature of expropriation proceedings, which are proceedings against the property itself, the only indispensable party who must be joined as a defendant is the owner of the property. United Gas Pipe Line Co. v. New Orleans Terminal Co., 156 So.2d 297, 300 (La.App. 4 Cir.1963). As we held in Lucas I, NORA was not required to join Dr. Alden as a defendant because he lacked a legally protected interest in the Property. Although NORA was not required to be join him as a party to the expropriation proceeding, Dr. Alden was represented at the trial and asserted an interest in the Property. The trial court allowed him to file post-trial exceptions and a motion for new trial. In Lucas I, he filed a third party appeal, rehearing application, and application for certiorari from our prior decision. These multiple pleadings have all involved both Dr. Alden and NORA, the parties in this nullity action. His argument that the parties are not the same is disingenuous.
*1256 Third, as discussed above, Dr. Alden's argument that the issues are not the same here as in Lucas I is unpersuasive.
Fourth, Dr. Alden contends that this court's prior decision was limited to overruling his peremptory exception of non-joinder of an indispensable party. Again, as discussed above, our prior decision was not so limited. Although this exception for peremptory exceptions is premised on the notion that a jurisprudential doctrine cannot trump a Code of Civil Procedure provision, the applicable provision here is not the provision allowing re-urging of peremptory exceptions, but rather Article 2005[2], limiting subsequent attempts to nullify a judgment once an appellate decision has been rendered. The purpose behind the limitations Article 2005[2] imposes on subsequent nullity actions is to promote the goal of finality of judgments. See Plotkin, supra.
Fifth, Dr. Alden's attempt to invoke the exception for a change in the factual circumstances was addressed, and rejected above, in connection with our analysis of Article 2005[2]. As we stated, the underlying material facts have not changed since our prior decision; hence, the exception for a change in circumstances is inapposite.
Finally, Dr. Alden argues that the law of the case doctrine is inapplicable because this court's prior decision that he had no legally protected interest in the Property before the tax sale deed was executed and recorded is palpably erroneous and has resulted in manifest injustice. We disagree. Indeed, as NORA emphasizes, our prior holding is supported by two well-established legal principles. First, title to immovable property cannot be transferred without a writing. In the context of a tax sale, the required writing is the tax sale deed provided for in La. R.S. 47:2183. Indeed, in State ex rel. Hinton v. Justice, 248 So.2d 361, 363 (La.App. 4th Cir.1971), this court held that such a signed, tax sale deed is sacramental, reasoning: "it appears axiomatic that the signature of a vendor, or his representative, on such a [tax sale] deed or instrument is sacramental. He is the only one who can transfer title to the property and without his signature there has been no such transfer." Id. The instant case is even stronger in that not only was the tax deed not signed, it did not even exist until after the expropriation judgment was rendered.
The second well-established principle is that an unrecorded purchase of an immovable has no effect as to third party purchasers (like NORA). Moreover, as noted earlier, NORA had the right to rely on the public records in determining the identity of the property owners it was required to name as defendants. Stroughter, XXXX-XXXX at p. 7, n. 3, 861 So.2d at 944-45. Given these well-settled principles, we find no palpable error in our prior holding.
Dr. Alden also argues that it would be inequitable or unconscionable to enforce the expropriation judgment against him because NORA knew he owned the property and was renovating it, yet failed to give him the required statutory and constitutional notice of the expropriation proceedings or to comply with the requirements for expropriation. This claim is the basis for Dr. Alden's argument that he stated a claim to annul under La. C.C.P. art. 2004 based on fraud or ill practices. However, as discussed elsewhere, Dr. Alden failed to allege any operative, material facts not contained in the record on the prior appeal to support this claim. Given his failure to even allege any subsequent factual developments since this court's prior decision was rendered, we reject Dr. Alden's request to have this court reconsider the application of the law to the same facts. See Will Drill Resources, Inc. v. *1257 Huggs, Inc., 36,797 (La.App. 2 Cir. 1/29/03), 836 So.2d 1211 (based on law of case doctrine rejected litigant's request to have appellate court decide same issue based on its construction of same document construed on prior appeal). As NORA points out, this court's prior decision affirming the expropriation judgment rejected these same arguments.
NORA further points out that this court recently rejected similar claims of bad faith by Dr. Alden against NORA in another case. Stroughter, XXXX-XXXX at p. 7, n. 3, 861 So.2d at 944-45. There, we noted that NORA's actions in commencing and continuing an expropriation proceeding despite actual knowledge of Dr. Alden's unrecorded tax sale purchase and plans to renovate were reasonable. We noted that NORA "was reasonable in continuing the proceeding after investigating Dr. Alden's claim that he had begun renovating the Property and discovering it to be untrue." Id. Similarly, in this case NORA's witness, Ms. Leon, testified at the trial that she inspected the Property and found no work in progress.
Summarizing, we find both the law of the case doctrine and Article 2005[2] apply and decline to reconsider our prior ruling.

DECREE
Having previously held that Dr. Alden has no legally protected interest in the Property and having previously rejected Dr. Alden's request to annul the expropriation judgment, we affirm the judgment of the trial court at appellant's cost.
AFFIRMED.
NOTES
[1] Although our prior opinion refers to the date as November 13th, the record reflects the tax sale occurred on November 16, 2001.
[2] This amount apparently included the 1999 and 2000 delinquent taxes Dr. Alden paid to purchase the Property at tax sale on November 16, 2001.
[3] La. C.C.P. art. 3752 provides:

The notice referred to in Article 3751 [entitled "Notice to be recorded to affect third persons"] shall be in writing, signed by the plaintiff, defendant, or other party to the action or proceeding who desires to have the notice recorded, or by a counsel of record for such party, showing the name of the court in which the action or proceeding has been filed, the title, docket number, date of filing, and object thereof, and the description of the property sought to be affected thereby.
This notice shall be recorded in the mortgage office of the parish where the property to be affected is situated, and has effect from the time of the filing for recordation.
The relevance of the filing of a notice of lis pendens is that a subsequent sale of the property is subject to La. C.C. art. 2453, which provides:
When the ownership of a thing is the subject of litigation, the sale of that thing during the pendency of the suit does not affect the claimant's rights. Where the thing is immovable, the rights of third persons are governed by the laws of registry.
[4] The relevance of the blighted status of the Property to a tax sale purchaser is that La. Const. art. 7, § 25 provides for a shorter eighteen-month (in place of the general three-year) redemption period for blighted property.
[5] The other property referred to in this letter is the property that was at issue in New Orleans Redevelopment Authority v. Stroughter, XXXX-XXXX (La.App. 4 Cir. 12/17/03), 861 So.2d 940, writ denied, XXXX-XXXX (La.4/2/04), 869 So.2d 888. In Stroughter, the timing of the expropriation proceeding was different than in this case. There, the expropriation petition was not filed until March 2002. Before the scheduled July 2, 2002, trial date, NORA apparently obtained a tax certificate that reflected Dr. Alden's payment of the delinquent property taxes. In response, NORA filed an amended petition to name Dr. Alden as an additional defendant, stating that he was the "purchaser of the referenced property for unpaid 1997 taxes ... as reflected by the unrecorded tax sale from the City of New Orleans dated November 13, 2001." Stroughter, XXXX-XXXX at p. 3, 861 So.2d at 942. Thereafter, NORA re-inspected the property, found the property was renovated, and dismissed the expropriation proceeding. Dr. Alden then filed, inter alia, a motion for an award of attorney's fees under La. R.S. 19:201, claiming entitlement to such fees as "owner" of property subject to a dismissed expropriation proceeding. Without deciding if he was an "owner" under that statute, we held he was not entitled to attorney's fees.
[6] As NORA requested in its expropriation petition, the trial court appointed a curator to represent Mr. Lucas. At trial, the curator represented that Mr. Lucas' whereabouts could not be determined. However, while this case was before us on Dr. Alden's first appeal, the Succession of Lucas filed a motion to be substituted as the proper party defendant, and the Succession of Lucas was allowed to file a brief in that appeal. In a separate appeal, we affirmed the trial court's judgment denying the Succession of Lucas' motion for new trial, and the Louisiana Supreme Court denied both the Succession of Lucas' and Dr. Alden's applications for certiorari from that decision. New Orleans Redevelopment Authority v. Lucas, XXXX-XXXX (La.App. 4 Cir. 2/11/04), 868 So.2d 325 (unpub.), writs denied, XXXX-XXXX, XXXX-XXXX (La.4/30/04), 872 So.2d 494.
[7] The purchase agreement reflects that the property was sold to Ms. Aiola and Mable Tobias.
[8] The record contains no ruling on the exceptions.
[9] According to NORA, this declaration was designed to allow Dr. Alden to recover the money he paid for the taxes. At trial, NORA's counsel commented that "[a]lthough I have a general judgment prepared, I'm not ready to submit it.... There needs to be some discussion between the City of New Orleans and the tax purchaser to avoid any future conflict relative to what amounts to which they're entitled." Moreover, this ranking dispute between the City and Dr. Alden also prompted the City to file a motion seeking to have Dr. Alden declared owner, as opposed to creditor, and Dr. Alden opposed that motion. We stress that Dr. Alden's rights against the City are not before us on appeal, and we express no opinion on that issue.
[10] Although we acknowledge that Dr. Alden's petition stated a cause of action for nullity at the time it was filed, we find no error in the trial court's dismissal of his petition. The trial court had previously denied Dr. Alden's motion for new trial, which contained substantively the same arguments asserted in the nullity petition. The trial court thus was entitled to refuse to reconsider the same legal arguments it previously rejected under the law of the case doctrine. Although that doctrine generally is applied in the appellate context, as mentioned above, it also has been invoked in contexts similar to this one to find that "the trial court was justified in refusing to try anew the identical factual issues already tried and decided in the same case." Succession of Cameron, 446 So.2d 948, 951 (La.App. 3rd Cir.1984).
[11] The following errors, which were quoted in full in this court's unpublished opinion, were assigned by Dr. Alden in Lucas I:

1. The trial court erred in denying [Dr.] Alden's motion to continue, in entering judgment against a person not named as a party, and in denying [Dr.] Alden's motion for new trial.
2. The trial court erred in failing to grant [Dr.] Alden's exceptions, in failing on its own motion to supply the objections of nonjoinder of a party, no cause of action, no right of action, and in failing to hold NORA to its statutory and constitutional duties.
3. The trial court erred in both expropriating the property from Elmer Lucas and ordering redemption of the tax sale from [Dr.] Alden, which forms of relief are mutually exclusive.
4. The trial court erred in not fully compensating [Dr.] Alden for the property taken from him.