SANDRA CABRINA JENKINS, Judge.
| iThis is an expropriation case involving two issues: (1) whether the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (“URA”) is applicable when a political subdivision owns land that is expropriated by the State; and (2) determining what classifies as a “compensable relocation expense” under either the URA or the general expropriation laws. Plaintiff appeals the trial court’s judgment granting defendants’ motion in limine and motion for partial summary judgment, finding that the URA applies and the expenses sought are not classifiable compensable relocation expenses. For the following reasons, the trial court’s judgment is reversed and remanded in part, and affirmed in part.
FACTS AND PROCEDURAL HISTORY
Appellant, Orleans Parish School Board (“OPSB”), filed an inverse condemnation suit against appellees, the State of Louisiana and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (collectively “the Board”) alleging a taking of OPSB’s property located at 2009 Palmyra Street and 236 South Johnson Street in New Orleans, Louisiana, |2known as McDonogh No. 11 School[1] (“the Property”). In response, *848 the Board filed a reeonventional demand, seeking to expropriate the Property pursuant to La. R.S. 19:1 et seq. and La. R.S. 19:141 et seq.[2] Upon finding the Property was necessary to facilitate the construction of a.new medical center, the trial court signed the Board’s order of expropriation. Accordingly, the Board deposited into the registry of the court the amount of $2,340,000 as just compensation due to OPSB for the taking of the Property.[3] OPSB then filed an answer asserting numerous claims, including replacement costs and other uncompensated damages.
Following discovery, cross motions for summary judgment were filed on the appropriate methodology to determine just compensation and the fair market value of the Property. The trial court granted the Board’s motion and entered a judgment on March 1, 2012, dismissing all of OPSB’s claims, except those with respect to compensable relocation expenses. OPSB appealed that judgment, and it was affirmed by this Court.[4] Thereafter, OPSB provided the Board with a report which represented its claims for compen-sable relocation expenses, including the costs for establishing and running the facility off Almonaster Avenue (“the Almo-naster site”) which temporarily housed the students after the taking,[5] and the loss of future utility of various repairs and improvements made to the Property.
lsThe Board filed a motion in limine seeking to exclude the introduction of any evidence relating to OPSB’s lost utility damages. The trial court granted the motion on the basis that the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (“URA”) applies to OPSB, which does not classify lost utility damages as a compensable relocation expense. The trial court added that even if the URA did not bar recovery for such, these damages were previously considered and included in the market value analysis for which reimbursement was already given.
The Board also filed a motion for partial summary judgment seeking dismissal of OPSB’s claim for expenses associated with the Almonaster site. The trial court granted the motion finding that the URA does not classify establishing a temporary modular facility as a compensable relocation expense. Regardless of the URA barring recovery for such, the trial court further stated that an additional award would constitute a double recovery as these costs *849 were included in the funds the Board already paid.
The trial court subsequently entered a final judgment, incorporating its rulings to the Board’s motion in limine and motion for partial summary judgment. It is from this judgment that OPSB now appeals.
LAW AND ANALYSIS
On appeal, OPSB raises the following three assignments of error: 1) the trial court erred in finding that the URA applies to OPSB; 2) the trial court erred in determining that the costs associated with the temporary facility are not a | compensable relocation expense; and 3) the trial court erred in finding that lost utility damages were previously considered and included in the market value analysis of McDonogh No. 11, which OPSB has already received reimbursement.

Application of URA to OPSB

Questions of law, such as statutory interpretation, are subject to de novo review. Hand v. City of New Orleans, 04-0845, p. 5 (La.App. 4 Cir. 12/22/04), 892 So.2d 609, 612 (citing Delacroix Corp. v. Perez, 98-2447, p. 4 (La.App. 4 Cir. 11/8/00), 794 So.2d 862, 865). A trial court’s decision, if based on an erroneous application or interpretation of the law, is not afforded deference on review. Id. (citing Delacroix Corp., 98-2447, p. 4, 794 So.2d at 865).
The underlying purpose of the URA is “[t]o ensure persons displaced as a direct result of Federal or federally-assisted projects are treated fairly, consistently, and equitably so that such displaced persons will not suffer disproportionate injuries as a result of projects designed for the benefit of the public as a whole.” 49 C.F.R. § 24.1(b). Within the context of the URA, a person is defined as “any individual, family, partnership, corporation, or association.” 49 C.F.R. § 24.2(a)(21). While the URA does not provide definitions for these five terms, it is well-established that the term’s generally understood meaning is applied when the regulation is silent. State v. Williams, 03-3514, p. 12 (La.12/13/04), 893 So.2d 7, 15 (“However, when a term is not defined in a statute, that term must be given its usual, prevailing meaning.”).
The first two terms — individual and family — are excluded from our analysis as OPSB would not constitute as either considering their ordinary meanings. Black’s Law Dictionary defines “partnership” as “[a] voluntary association of two or more persons who jointly own and carry on a business for profit.” Blaok’s Law | {¡Dictionary 1295 (10th ed.2014). OPSB is neither owned by its members nor a business for profit, thus, OPSB does not constitute as a partnership. Black’s Law Dictionary defines “corporation” as “[a]n entity (usu[ally] a business) having authority under law to act as a single person distinct from the shareholders who own it and having rights to issue stock and exist indefinitely.” Blaok’s Law Diotionary 415 (10th ed.2014). OPSB does not have shareholders or the rights to issue stock. Therefore, by its basic definition, OPSB fails as a corporation. Finally, Black’s Law Dictionary defines “association” as “[a]n unincorporated organization that is not a legal entity separate from the persons who compose it.” Blaok’s Law Dictionary 148 (10th ed.2014). OPSB is unincorporated, however, its status is separate from its members and thus, cannot stand as an association. See Wells v. St. Tammany Parish Sch. Bd., 340 So.2d 1022, 1024 (La.App. 1 Cir. 12/20/76) (“A parish school board is a legal entity separate from its individual members.” (citing La. R.S. 17:51; La. R.S. 17:81; La. R.S. 17:87.6)).
A school board is a political subdivision of the state. La. R.S. 13:5102(B)(1); La. Const, art. VI, § 44(2). Contrary to the *850 trial judge’s and the Board’s reliance on La. R.S. 17:51, which states that “parish school boards are constituted bodies corporate. with power to sue,” La. R.S. 17:51 does not stand for the proposition that school boards are corporations. Such an inference is unsupported and unreasonable. OPSB is simply a political subdivision that, considering the above definitions, does not constitute as a “person” within the context of the URA. Therefore, we find the URA does not apply to OPSB.

Compensable Relocation Expenses

If a property is expropriated, the owner is “entitled to receive compensation for the full extent of their loss as provided under the Louisiana Constitution of |fi1974.” Bd. of Sup’rs of La. State Univ. v. Boudreaux’s Tire & Auto Repair, L.L.C., 13-0444, p. 4 (La.App. 4 Cir. 3/5/14), 133 So.3d 1262, 1267 (quoting Orleans Parish Sch. Bd., 12-1312, p. 4, — So.3d at-). Pursuant to Article I § 4 of the Louisiana Constitution, the full extent of an owner’s loss “shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred because of the expropriation.” Id. (citing Orleans Parish Sch. Bd., 12-1312, p. 4, — So.3d at-). Furthermore, La. Const, art. I, § 4 “permits a landowner to remain in an equivalent financial position to that which he enjoyed before the taking.” W. Jefferson Levee Dist. v. Coast Quality Const. Corp., 640 So.2d 1258, 1271 n. 20 (La.1994) (citing State, Dep’t of Transp. & Dev. v. Dietrich, 555 So.2d 1355, 1358 (La.1990)).
Ordinarily, OPSB is entitled to full compensation, however, its recovery is limited by the trial court’s March 1, 2012 judgment which dismissed all of OPSB’s remaining claims, except those regarding compensable relocation expenses.[6] Thus, the essential issue before us is whether the claims OPSB is seeking — costs for the temporary modular buildings and lost utility damages — are within the scope of “com-pensable.relocation expenses.”

A. Costs for Temporary Modular Buildings

The trial court granted the Board’s motion for partial summary judgment, finding that OPSB was not entitled to recover costs associated with the Almonaster site. Our review of summary judgment is de novo, using the same standard applied |7by the trial court in deciding whether summary judgment is appropriate. Francis v. Union Carbide Corp., 12-1397, pp. 2-3 (La.App. 4 Cir. 5/8/13), 116 So.3d 858, 860 (citing King v. Dialysis Clinic Inc., 04-2116, p. 5 (La.App. 4 Cir. 1/4/06), 923 So.2d 177, 180). Applying that standard, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue of material fact. Id., 12-1397, p. 3, 116 So.3d at 860; La. G.C.P. art. 966(B)(2).[7]
The burden of proof rests with the moving party and all doubts must be resolved in the non-moving party’s favor. Gailey v. Barnett, 12-0830, p. 4 (La.App. 4 Cir. 12/5/12), 106 So.3d 625, 627-28. Once the *851 mover makes a prima facie, showing that the motion should be granted, the non-moving party shall present evidence to show genuine factual issues remain and failure to do so mandates the granting of the motion. Smith v. Treadaway, 13-0131, p. 4 (La.App. 4 Cir. 11/27/13), 129 So.3d 825, 828 (quoting Schultz v. Guoth, 10-0343, pp. 6-7 (La.1/19/11), 57 So.3d 1002, 1006); see also, La. C.C.P. art. 966(C)(2).
OPSB claims that it spent $1,985,169.00 to establish and run the Al-monaster site. The trial judge denied recovery for this expense finding that it would allow OPSB to receive a double recovery.[8] The Board agrees that such an award would |8be a double recovery and cites State ex rel. Dep’t of Transp. & Dev. v. Wade, 07-1385 (La.App. 3 Cir. 5/28/08), 984 So.2d 918 to support its position. In Wade, plaintiffs deposited $176,310 into the registry of the court as just compensation for the expropriation of the owner’s property. Id., 07-1385, 984 So.2d 918. Thereafter, a jury trial was held to determine the replacement and improvement values, if any. The jury arrived at a figure for this recovery, which was in addition to the amount the owners received for just compensation. The Third Circuit found that such an award would allow the owners to receive a double recovery, and thús reduced the award by the amount they already collected. Id., 07-1385, p. 8, 984 So.2d at 924. The Board’s reliance on Wade is misguided as the instant case is factually distinguishable.
Here, the Almonaster site was never established to replace the Property; rather, it was set up as a temporary solution because time was running out and no other option was available.[9] Contrary to the Board’s contentions, the just compensation award is simply reimbursement for the Property, and does not cover the Almo-naster site expenses. If OPSB is not compensated for the costs of the Almonaster site, which were only incurred because of the Board’s actions, OPSB would ultimately have no funds to establish a facility to replace McDonogh 11. Thus, if we were to adopt the Board’s position, OPSB would not be in an equivalent financial position that existed before the taking, which is inconsistent with Louisiana’s constitutional provisions.
IsGenuine factual issues remain that prevents the granting of the Board’s motion for partial summary judgment. Accordingly, we remand this matter to the trier of fact for a determination on whether the costs of the Almonaster site are compensa-ble relocation expenses.

B. Lost Utility Damages

The trial court granted the Board’s motion in limine, excluding evidence regarding OPSB’s loss of utility *852 damages. A ruling on an evidentiary issue, such as a motion in limine, will not be disturbed unless it is determined on appeal that the trial court abused its great discretion. Cooper v. Pub. Belt R.R., 02-2051, p. 3 (La.App. 4 Cir. 1/22/03), 839 So.2d 181, 183 (citing Heller v. Nobel Insurance Group, 00-0261 (La.2/2/00), 753 So.2d 841; Furlough v. Union Pacific R.R. Co., 33,658, p. 7 (La.App. 2 Cir. 8/31/00), 766 So.2d 751, 757).
The trial court determined that OPSB’s claims for lost utility damages “have already been thoroughly evaluated, first by appraisers, then by this Court prior to its ■rendering of its March 1, 2012 judgment.” OPSB disagrees, contending that future utility damages are not included in an award for just compensation. In support of this, OPSB claims its expert’s report proves that the renovation costs and the appraised value of McDonogh No. 11 are independent from the fair market value of the Property. Thus, considering La. Const, art. I § 4(B)(5) provides that the landowner is entitled to “any other damages actually incurred [] because of the expropriation,” OPSB asserts that its lost utility damages are recoverable.
OPSB’s credence on La. Const, art. I § 4 is misplaced. As noted elsewhere in this opinion, the trial court’s March 1, 2012 judgment, which only reserved OPSB’s claims for compensable relocation expenses, is absolute. OPSB’s lost utility damages pertain to improvements and repairs done to McDonogh 11, which |inare clearly unrelated to the relocation of the school. Therefore, the March 1, 2012 judgment dismissed any claim that OPSB may have had for these damages.
We are not persuaded by OPSB’s attempt to couch its lost utility damages as “compensable relocation expenses.” Thus, we find the trial court did not abuse its discretion in granting the Board’s motion in limine, excluding evidence relating to these damages. This assignment is without merit.
DECREE
For the foregoing reasons, finding the ■URA inapplicable to the instant suit, the judgment of the trial court granting the Board’s motion for partial summary judgment is reversed, and we remand this matter for further proceedings in accordance with this opinion. The judgment of the trial court granting the Board’s motion in limine is affirmed.
AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.

. The school opened in 1879 and operated until Hurricane Katrina. In 2008, after approximately $3,000,000 in renovations, the *848 building reopened as Priestley School of Architecture and Construction, a charter high school operating under the jurisdiction of OPSB.

. These statutes provide for the general expropriation authority and grant the Board "quick-take” expropriating authority, respectively.

. The entirety of these funds was withdrawn by OPSB.

. Orleans Parish Sch. Bd. v. State, Div. of Admin., 12-1312 (La.App. 4 Cir. 2/27/13),-So.3d -, 2013 WL 772520

. OPSB’s claim regarding these costs stem from the nature of the expropriation, thus, a brief overview of the taking is warranted. OPSB requested to retain possession of the Property throughout the 2010-2011 school year, however, the Board insisted the Property be vacated by the end of the 2010 Christmas holiday. OPSB’s late attempts to secure facilities from the State of Louisiana’s Recovery School District as well as the Archdiocese of New Orleans proved unsuccessful. With essentially no time and no other option, OPSB established a temporary campus at the location where OPSB’s central services building was until Hurricane Katrina. The Almo-naster site consisted of leased modular buildings placed on a concrete slab. All students were assimilated into existing schools within eighteen months after the Property was vacated.

. The March 1, 2012 judgment was affirmed by this Court on February 27, 2013, and is thus the law of the case. See New Orleans Redevelopment Auth. v. Lucas, 02-2344, p. 14 (La.App. 4 Cir. 8/25/04), 881 So.2d 1246, 1254 (quoting Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81, 83 (La.1973); Louisiana Land and Exploration Co. v. Verdin, 95-2579, pp. 3-4 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65).

. La. C.C.P. art. 966 was amended in 2013 and again in 2014. These amendments are not implicated in the issues presented in this appeal. See 2013 La. Acts No. 391, § 1, effective August 1, 2013, and 2014 La. Acts No. 187, § 1, effective August 1, 2014.

. The trial judge dismissed this claim reasoning that:
To the extent that the OPSB received fair market value for the McDonogh No. 11 facility and to the extent that the Board has agreed to pay for actual moving expenses, OPSB has received compensation for the full extent of its loss. Thus, to the extent that fair market value is the proper measure of damages, allowing OPSB to recover for the costs of a replacement facility (i.e., expenses for the set up and lease of 4300 Almonaster) would result in OPSB "receiving a double recovery for the loss.” State ex rel. Dep’t of Transp. & Dev. v. Wade, 2007-1385 (La.App. 3 Cir. 5/28/08), 984 So.2d 918, 922 writ denied, 2008-1896 (La. 12/12/08), 997 So.2d 561.

. The trial court recognized that the nature of the Almonaster site — whether temporary or permanent — is not legally relevant because the constitutional guarantee of full compensation applies regardless. We note that this case presents an exception to this general rule as the nature of the Almonaster site is relevant to determine the extent of what the Property’s just compensation award covers.