1 So.3d 588 (2008)
Willie BENARD
v.
EAGLE, INC., et al.
No. 2008-CA-0262.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 2008.
Rehearing Denied January 7, 2009.
*589 Mickey P. Landry, Frank J. Swarr, David R. Cannella, Landry & Swarr, L.L.C., New Orleans, LA, for Plaintiff/Appellant.
Samuel M. Rosamond III, Adam D. de Mahy, Crawford Lewis PLLC, New Orleans, LA, for OneBeacon Insurance Company.
Susan B. Kohn, Simon, Peragine, Smith & Redfearn, L.L.P. New Orleans, LA, for Eagle, Inc.
(Court composed of Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
EDWIN A. LOMBARD, Judge.
On August 24, 2004, Willie Benard ("Mr.Benard") filed a Petition for Damages in the Civil District Court for the Parish of Orleans against several defendants, including Eagle Asbestos & Packing Company ("Eagle"), alleging that he developed mesothelioma as a result of exposure to asbestos while employed as a maintenance mechanic at the Celotex plant in Westwego, Louisiana, from 1968 to 1978. Mr. Benard's petition further alleged that Eagle sold asbestos products to Celotex during the time that he was employed there. The allegations against Eagle, and numerous other defendants, were based on several theories of recovery including negligence, strict liability, unreasonably dangerous per se, unreasonably dangerous in composition or construction, unreasonably *590 dangerous for failure to warn, unreasonably dangerous for design defect, and fraud.
Eagle and its insurer, OneBeacon America Insurance Company ("OneBeacon"), along with co-defendants McCarty and Reilly-Benton, moved for summary judgment on two bases: First, that Mr. Benard could not prove that he had "significant exposure" to their products; and second, that they had no duty to warn Celotex, a sophisticated user, or its employee, Mr. Benard, of the hazards of asbestos exposure. The trial court denied the motions, and Eagle and OneBeacon filed an application for supervisory writ with this Court seeking review of the trial court's denial of their motions for summary judgment.
On December 25, 2005, in writ number 2005-C-1155, a panel of this Court granted the application for supervisory writ, reversed the portion of the trial court's judgment that denied Eagle and OneBeacon's Motion for Summary Judgment, and granted summary judgment in favor of Eagle and OneBeacon, dismissing Mr. Benard's claims against Eagle and OneBeacon, with prejudice. Afterward, Mr. Benard did not file an application for rehearing with this Court nor an application for writs to the Louisiana Supreme Court.
On January 24, 2006, Plaintiff's counsel filed a Motion for Status Conference and/or Trial Date to reset the case for trial on the merits against Eagle and OneBeacon as well as the Reilly-Benton Company. Subsequently, Eagle and OneBeacon (hereinafter sometimes referred to as "Defendants") responded by filing Exceptions of Res judicata and Lack of Subject Matter Jurisdiction, seeking to have the trial court enforce this Court's ruling and declare that all of Mr. Benard's claims against them were dismissed. Defendants also filed a Motion for Sanctions. After a hearing on May 18, 2006, the trial court sustained the Defendants' Exceptions but denied the Motion for Sanctions. A judgment was signed on May 22, 2006. It is from this judgment that Plaintiffs, Mr. Benard's statutory heirs,[1] now appeal.
On appeal, Plaintiffs argue that the trial court erred in sustaining the Defendants' Exceptions because in granting Defendants' writ, this Court only dismissed Plaintiff's claims against Eagle and One-Beacon that pertained to an alleged "failure to warn" and left untouched the remaining negligence and strict liability claims against Eagle and OneBeacon. Conversely, Eagle and OneBeacon contend that all of Plaintiffs' claims against them were previously ruled on when this Court granted summary judgment in favor of Eagle and OneBeacon and dismissed Plaintiff's "claims" against them. Therefore, Defendants assert that the trial court properly granted their Exceptions.

Law & Discussion
The doctrine of res judicata precludes re-litigation of claims and issues arising out of the same factual circumstances when there is a valid final judgment. Ansalve v. State Farm Mutual Automobile Ins. Co., 95-0211, p. 8 (La.App. 4 Cir. 2/15/96), 669 So.2d 1328, 1333. It promotes judicial efficiency and final resolution of disputes. Avenue Plaza, L.L.C. v. Falgoust, 96-0173, pp. 4-5 (La.7/2/96), 676 So.2d 1077, 1079.
LSA-R.S. 13:4231 states:
Except as otherwise provided by law, a valid and final judgment is conclusive *591 between the same parties, except on appeal or other direct review, to the following extent:
1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
On appeal, Plaintiffs contend that the Fourth Circuit's writ disposition in 2005-C-1155 did not address or dismiss their unreasonably dangerous, negligence, and strict liability claims under Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986), but rather, dismissed only the claims related to the duty to warn and that these claims remain to be litigated. However, the record of these proceedings indicates that all of the Plaintiffs' causes of action against Defendants were raised and were disposed of by this Court. In the writ disposition, the Court noted that Eagle and OneBeacon were before the Court seeking review of the trial court's motions for summary judgment and that the motions were based on two groundsthat Mr. Benard could not prove exposure to their products and that it had no duty to warn Celotex or Mr. Benard of the danger of asbestos since Celotex was a sophisticated user. The Court further noted, "[I]n connection with the first ground [exposure], Eagle and OneBeacon also filed a motion to strike the deposition testimony of Huey Duhe, whose testimony the plaintiff had submitted in opposition to the motion for summary judgment." The Court then went on to hold that the "trial court should have granted summary judgment on the basis that Celotex was a sophisticated user," and therefore, "we decline to consider whether the trial court erred by denying the motion to strike [the testimony proffered by Plaintiffs to support the exposure claim] as that issue is now moot." The Court decreed, "[W]e grant summary judgment in favor of Eagle and OneBeacon, and dismiss plaintiff's claims against them." However, despite the plain wording of the Court's decree, Plaintiffs maintain that only the failure to warn claims were actually litigated and dismissed by the Court and that their claims for strict liability and negligence remain.
An identification of the issues actually litigated is determined by examining the entire record, not just the pleadings. Ebey v. Harvill, 26,373, p. 3 (La.App. 2 Cir. 12/7/94), 647 So.2d 461, 464. Considering the record in this matter, we find that all of Plaintiffs' claims against Eagle and OneBeacon were previously adjudicated. In its Opposition to Eagle and One Beacon's application for supervisory writs to this Court, Mr. Benard argued that his burden of proving significant exposure to Eagle's products was satisfied by the deposition testimony of Huey Duhe, which was taken in two previous and unrelated cases, that indicated that Celotex may have bought heat insulation for pipes from Eagle. However, the Court determined that since it had determined that Celotex was a sophisticated user, the issues related to exposure were now moot. Thus, implicitly, this Court reviewed and *592 rejected the Plaintiffs' Halphen claims of negligence, unreasonably dangerous per se, and strict liability. Importantly, although Plaintiffs now argue that this judgment was erroneous, Plaintiffs did not seek a timely review of this Court's ruling granting summary judgment in favor of Eagle and OneBeacon, either through an application for rehearing or by application for writs to the Supreme Court, and therefore, it became a final judgment. Once a final judgment acquires the authority of a thing adjudged, no court has jurisdiction to change the judgment. Tolis v. Board of Supervisors of Louisiana State University, 95-1529, pp. 2-3 (La.10/13/95), 660 So.2d 1206, 1206-1207. Accordingly, pursuant to the doctrine of res judicata, Plaintiffs cannot re-litigate these issues.
Plaintiffs further argue that even if the doctrine of res judicata is applicable to all of their claims against Eagle and One-Beacon, it would be a miscarriage of justice to apply the doctrine in this case and deprive Plaintiffs of their day in court against Eagle on the strict liability and negligence claims. Although we ultimately disagree with Plaintiffs' argument, we are mindful of La. R.S. 13:4232 which states in pertinent part:
A. A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or,
(3) When the judgment reserved the right of the plaintiff to bring another action. [Emphasis supplied.]
The comments to La. R.S. 13:4232 state that this statute gives a court the authority to exercise its equitable discretion to balance the principle of res judicata with the interests of justice under exceptional circumstances. However, the comments also provide, "[t]his discretion must be exercised on a case by case basis and such relief should be granted only in truly exceptional cases, otherwise the purpose of res judicata would be defeated...." Thus, pursuant to La. R.S. 13:4232, we do have the discretion to decline to apply the doctrine in this case if we find that exceptional circumstances exist that would justify our doing so. Our brethren in other circuits have applied the exception, although sparingly.
For example, in Brouillard v. Aetna Cas. & Sur. Co., 94-1559 (La.App. 3 Cir. 5/10/95), 657 So.2d 231, the Third Circuit held that convoluted factual or legal scenarios could qualify as exceptional circumstances which justify the application of this exception and used its discretion in determining that res judicata should not apply to the plaintiff's claims. However, in the case before us, we do not find, nor do the Plaintiffs assert, that the factual and legal scenarios involving Eagle are so complex or convoluted that res judicata should not apply because a truly exceptional circumstance is present. See also, Chaisson v. Oceanside Seafood, 97-2756 (La.App. 1 Cir. 6/29/98), 713 So.2d 1286.
The comments to this section further note that the exception is not intended to apply in the case where the plaintiff has simply failed to assert a right or claim for damages through oversight or lack of proper preparation. Thus, in Spear v. Prudential Property & Cas. Ins. Co., 98-1663 (La.App. 4 Cir. 1/13/99), 727 So.2d 640, this Court found no truly exceptional circumstances existed such that res judicata should not apply where the plaintiff failed to assert a claim through oversight or lack of proper preparation. Accord, Floyd v. City of Bossier, 38,187 (La.App. 2 Cir. 3/5/04), 867 So.2d 993; Kevin Associates, L.L.C. v. Crawford, 2004-2227 (La. *593 App. 1 Cir. 11/4/05), 917 So.2d 544, writ denied, 06-0220 (La.5/5/06), 927 So.2d 311. By analogy, in the case at bar, the Plaintiffs effectively, through a desire to retain a trial date because they wanted their dying client to be able to testify, failed to seek appropriate further review of this court's granting of supervisory writs in writ 2005-C-1155. This was a strategic decision on the part of Plaintiffs' counsel, and cannot now be the basis for a finding of exceptional circumstances, especially in light of the general speedy manner in which this Court handles applications for rehearing when this Court is notified of the urgency of the need for prompt action.
In Centanni v. Ford Motor Co., 93-1133 (La.App. 3 Cir. 5/4/94, 636 So.2d 1153), writ denied, 94-1949 (La.10/28/94), 644 So.2d 656, another panel of the Third Circuit found a lack of exceptional circumstances when the party seeking to assert that res judicata did not apply failed to apply for a new trial, appeal, or seek nullity of judgment. Like the plaintiffs in Centanni, the Plaintiffs in the instant case did not seek timely review of this Court's writ disposition overturning the trial court's denial of Eagle's motion for summary judgment. The Plaintiffs never asserted in any way in any appellate court that our decision went too far.
At the hearing on this appeal, counsel for Plaintiffs argued that application of the doctrine of res judicata to all of Plaintiffs' claims would be unfair since this Court's writ disposition granting summary judgment and dismissing Mr. Benard's "claims" against Eagle and OneBeacon was erroneous, or at best, unclear. However, even if, assuming arguendo, that the judgment was erroneous, the correctness of the ruling on that motion is not before this Court. As previously stated, this Court's judgment became final when Mr. Benard failed to apply to this Court for rehearing or failed to timely file an application for supervisory writ to the Louisiana Supreme Court. Thus, our duty here is only to determine whether the claims Plaintiffs attempt to bring against Eagle and OneBeacon were previously litigated, not whether the prior adjudication of these issues was correct or incorrect. However, even if this Court's decision granting summary judgment on all of Plaintiffs' claims was erroneous, we do not find that this would create an exceptional circumstance since Plaintiffs have produced no evidence to this Court that their deceased came in to substantial contact with any Eagle product.
To prevail, a plaintiff in an asbestos case must show, by a preponderance of the evidence, that he was exposed to asbestos from the defendants' products, and that he received an injury that was substantially caused by that exposure. Abadie v. Metro Life Ins. Co., 00-344 to 00-856 (La.App. 5 Cir 3/28/01), 784 So.2d 46, 90. When multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm. Quick v. Murphy Oil Co., 93-2267 (La.App. 4 Cir. 9/20/94), 643 So.2d 1291. The only evidence that the Plaintiffs have that would support any finding that Mr. Benard came into contact with an Eagle product at Celotex is the deposition testimony of Mr. Huey Duhe. Neither Eagle's nor OneBeacon's counsel were present for Mr. Duhe's deposition for they were not parties to the case in which Mr. Duhe's deposition was taken.
We have reviewed the excerpt of Mr. Duhe's deposition that is attached to the Plaintiffs' opposition to the motion for summary judgment filed by Eagle and OneBeacon forming the basis for this Court's decision in writ 2005-C-1155. That testimony fails to establish that Mr. Benard ever came into contact with any Eagle *594 product, let alone a significant quantity of an Eagle product that would justify holding Eagle and OneBeacon liable.[2] Our law does not permit one to speculate whether Mr. Benard came into contact with a significant quantity of any Eagle product containing asbestos. Palermo v. Port of New Orleans, 04-1804, 04-1805 (La.App. 4 Cir. 3/15/06), 933 So.2d 168, on rehearing, (La.App. 4 Cir. 1/19/07), 951 So.2d 425, writ denied, 07-0363 (La.6/13/07), 957 So.2d 1289; In re Asbestos Plaintiffs v. Bordelon, Inc., 96-0525 (La.App. 4 Cir. 10/21/98), 726 So.2d 926; Vodanovich v. A.P. Green Industries, Inc., 03-1079 (La.App. 4 Cir. 3/3/04), 869 So.2d 930. Accordingly, we do not find that the facts of this case justify the application of the exception to res judicata in this case.
The record reveals that all of the Plaintiffs' claims and/or causes of action against Eagle and OneBeacon were indeed previously litigated. Therefore, Plaintiffs are barred by res judicata from raising these issues and litigating them again. Accordingly, we find that the trial court was correct when it sustained Defendants' Exception of Res Judicata and once again declared that Plaintiffs' claims, in their entirely, against Eagle and OneBeacon, were dismissed with prejudice. We do not find that any exceptional circumstances exist that would necessitate that the doctrine of res judicata not be applied to this case.
Plaintiffs further contend that the trial court erred in sustaining Defendants' Exception of Lack of Subject Matter Jurisdiction. However, because we find the issue of res judicata dispositive of the questions presented, we need not reach Plaintiffs' argument on the propriety of the trial court's judgment sustaining Defendants' Exception for Lack of Subject Matter Jurisdiction.
AFFIRMED.
BONIN, J., dissents and assigns reasons.
BONIN, J., dissents and assigns reasons.
I respectfully dissent from the majority opinion affirming the trial court's granting of Eagle, Inc.'s exception of res judicata based on the claim that Eagle, Inc. (hereafter, "Eagle"), had been dismissed earlier from the litigation on a motion for summary judgment.[1]
The core issue to be addressed in this products liability action is whether this court's ruling on a prior writ application involving a motion for summary judgment, Benard v. American Surety Co., et al., unpubl. 05-1155 (La.App. 4 Cir. 12/27/05), dismissed Eagle as a party entirely from the litigation, or whether only a certain claim/theory for recovery, namely, a failure to warn,[2] was dismissed against Eagle. *595 Based upon my review of the record and applicable law, Eagle was not dismissed earlier from the litigation and is still subject to liability for all claims with the exception of those relative to the failure to warn. Instead of applying the principle of "law of the case" to the issue of a failure to warn which claim was in fact dismissed, the trial court erred in granting Eagle's exception of res judicata.

PROCEDURAL BACKGROUND
The instant appeal has its genesis in earlier proceedings involving a motion for summary judgment filed by Eagle, which urged two separate and distinct grounds for relief.[3] The first ground was premised on causation, whereby Eagle claimed the plaintiff was unable to sustain the burden of proving he was exposed to asbestos-containing material sold by Eagle. Causation is, of course, an essential element of the plaintiff's case and its absence would terminate the entirety of the litigation in Eagle's favor. Vodanovich v. A.P. Green Industries, Inc., XXXX-XXXX, p. 3 (La.App. 4 Cir. 3/3/04), 869 So.2d 930, 932, citing Quick v. Murphy Oil Co., 93-2267 (La. App. 4 Cir. 9/20/94), 643 So.2d 1291.
In its other ground supporting its motion for summary judgment, Eagle alleged it had no duty to warn of the dangers of asbestos because Celotex, the plaintiff's employer, was a "sophisticated user." Asbestos v. Bordelon, Inc., 96-0525 (La.App. 4 Cir. 10/21/98), 726 So.2d 926. This second ground, however, was not dispositive of the case as a whole, but only dispositive of one theory of the case. See La. C.C.P. art. 966(E) ("A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case." [Emphasis added.]).
The trial judge denied the motion for summary judgment as to both grounds.[4] Eagle sought supervisory relief. This court granted Eagle's writ application and, following a de novo review, the trial court's decision was reversed. Specifically, the judgment decreed:
Accordingly, we conclude that the trial court erred by failing to grant summary judgment on the basis that Eagle had no duty to warn Celotex, a sophisticated user, or Celotex employees such as the plaintiff, of the hazards of asbestos exposure. We, therefore, reverse the trial court's judgment insofar as it denies the motion for summary judgment filed by Eagle and OneBeacon [Insurance Company (hereafter, "OneBeacon")]. We grant summary judgment in favor of Eagle and OneBeacon, and dismiss the plaintiff's claims against them.

Benard v. American Surety Co, et al., unpubl. 05-1155 (La.App. 4 Cir. 12/27/05) (Emphasis added.). It is the interpretation of this judgment that is subject of the instant appeal.
Following this court's ruling, the deceased plaintiff's successors (hereafter, "plaintiffs") subsequently sought to proceed to trial in the matter against Eagle on its remaining claims. Relying on this court's action on the motion for summary judgment, Eagle filed an exception of res judicata alleging it had been entirely dismissed from the litigation. The trial court granted the exception agreeing that Eagle *596 was no longer a party to the action. The instant appeal followed.[5]

LAW AND DISCUSSION

Available Theories of Recovery
Due to the date of the alleged asbestos exposure, this case is not governed by the Louisiana Products Liability Act, La. R.S. 9:2800.51. Gilboy v. American Tobacco Co., 582 So.2d 1263 (La.1991). Rather, it is controlled by the Louisiana Supreme Court's decision in Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La. 1986), which was rendered in response to a certified question from the United States Court of Appeals for the Fifth Circuit. In addressing the certified question, the Louisiana Supreme Court set forth the elements for each strict liability theory of recovery and whether a manufacturer's knowledge is material with respect to each theory. The court stated:
As strict products liability in tort was originally conceived, the manufacturer's ability to know of the danger of its product at the time of sale was immaterial. Under pure strict liability theory, the product is on trial, not the knowledge or conduct of the manufacturer. Subsequently, additional products liability theories developed which permit the plaintiff to recover when the manufacturer fails to give adequate warning or adopt an alternate design to make the product safer ... Accordingly, whether the knowledge of the danger in a product is material, relevant, or admissible depends on the particular theory of recovery under which the plaintiff tries his case.

An essential element of a plaintiff's case under each products liability theory of recovery is proof that the defendant's product was unreasonably dangerous to normal use. The method of proof of this element varies under each theory, however, and this is why the knowledge available to the manufacturer is material only with regard to certain theories. Because there is disagreement among jurisdictions as to the nature, classification, and event the existence of some grounds of recovery, we will set forth the elements of each strict liability theory recognized by this court in order to explain whether knowledge available to the manufacturer is material under each theory.
In describing the theories of recovery, we use the classifications of unreasonably dangerous products recognized by most courts. Additionally, we recognize products which are "unreasonably dangerous per se" as a separate class of defective products. For products in this category liability may be imposed solely on the basis of the intrinsic characteristics of the product irrespective of the manufacturer's intent, knowledge or conduct. This category should be acknowledged as giving rise to the purest form of strict liability and clearly distinguished from other theories in which the manufacturer's knowledge or conduct is an issue.
Halphen, 484 So.2d at 113-114 (Emphasis added.).
*597 In addition to the unreasonably dangerous per se, the other theories of recovery articulated in Halphen are premised in the product being: (1) unreasonably dangerous in construction or composition, (2) unreasonably dangerous if the manufacturer fails to warn about a danger related to the way the product is designed and (3) unreasonably dangerous because of its design. In concluding its discussion on theories of recovery, the court noted:
The plaintiff may elect to try his case upon any or all of the theories of recovery. If he decides to pursue more than one, he is entitled to an instruction that evidence which is admissible exclusively under one theory may be considered only for that purpose.
Id., 484 So.2d at 115 (Emphasis added.).
Applying the reasoning in Halphen to the case sub judice, the record is clear that the plaintiff did not restrict his theory of recovery exclusively to a failure to warn. The plaintiff also had available claims based on unreasonable construction and composition, as well as unreasonable design.[6] Moreover, while the trial court exempted Eagle from liability on the sole issue of a failure to warn because the plaintiff's employer was a "sophisticated user," Eagle is still subject to exposure for damages based on the innate dangerous qualities of the product at issue or, in other words, because the product was "unreasonably dangerous per se."
"A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product ... [T]he theory's purpose is to evaluate the product itself, not the manufacturer's conduct." Id., 484 So.2d at 115 (Emphasis added.). Similar to the instant case, the Louisiana Fifth Circuit Court of Appeal addressed the issue of the availability of recovery for a product being unreasonably dangerous per se following a successful sophisticated user defense by a manufacturer. In Abadie v. Metropolitan Life Ins. Co., 00-344 (La.App. 5 Cir. 3/28/01), 784 So.2d 46, the court concluded, as to the issue of jury instructions, the theory of "sophisticated user" or "ordinary user" was immaterial when there are also allegations that the product was unreasonably dangerous per se because "it is the product itself that is evaluated, and the knowledge of the purchaser is irrelevant." Id., 784 So.2d at 80 (Emphasis added.).
The product at issue in this appeal is asbestos. Nothing in Eagle's motion for summary judgment addressed the plaintiff's unreasonably dangerous per se theory of recovery even though the seminal case has determined that asbestos was in that category of theories for which recovery may be granted in a products liability action. See Halphen v. Johns-Manville Sales Corp., 788 F.2d 274, 275 (5th Cir. 1986) ("We claim no prescience as to the universe of products which ultimately will be given the cognomen `unreasonably dangerous per se,' but we find it apparent from the citations and discussion in the certification response that the Supreme Court places asbestos in that category. Accordingly, what the manufacturer knew or could have known about the inherent danger of asbestos was irrelevant to the question of its liability for proximately caused injury." (Emphasis added.)). Thus, regardless of whether the plaintiff and his employer knew the product to be dangerous and had experience in handling *598 the product, recovery is still not barred based on other grounds of relief.
In the earlier decision granting writs in favor of Eagle, this court properly relied upon two cases for granting summary judgment and dismissing "the claims" against Eagle:
We also find that Eagle had no duty to provide the plaintiff, a Celotex employee and individual user of asbestos products, with a warning of the danger of these products. This holding is based upon Longo v. E.I. Dupont De Nemours & Co., 93-0756 (La.App. 4 Cir. 2/18/94), 632 So.2d 1193, and Damond v. Avondale Industries, Inc., 98-1275 (La.App. 4 Cir. 8/19/98), 718 So.2d 551.
Benard, supra.
Eagle now relies on Longo and Damond in support of its exception of res judicata. However, Eagle's reliance on these cases is misplaced since the plaintiff is now pursuing a recovery based upon, among others, a theory that a product is unreasonably dangerous per se and not a failure to warn. Particularly, the alleged dangerous products at issue in Longo and Damond were Teflon and sand, respectively. In both cases, the products were specifically determined not to be unreasonably dangerous per se. In the ruling on the motion for summary judgment subject of Eagle's earlier writ application, this court did not hold that asbestos was not a product which was unreasonably dangerous per se. Therefore, Longo and Damond surely would not have been relied upon to terminate the litigation against Eagle, but only to dispose of that one theory of recovery then before the court by virtue of the defendants' motion for summary judgment.

Partial Summary Judgment
The trial court erred in applying the principle of res judicata when this court's earlier judgment granted partial summary judgment in favor of Eagle only as to one of the plaintiff's theories of recovery. Prior to mid-1997, it was impermissible to have a partial summary judgment rejecting a theory of recovery as "... it [was] contrary to LSA-C.C.P. art.1915 and promote[d] piecemeal litigation." Coleman v. Robicheaux Airboats, Inc., 95-1843 (La.11/13/95), 662 So.2d 452. However, this precept changed when the Louisiana Supreme Court, in Douglass v. Alton Ochsner Medical Foundation, 96-2825 (La.6/13/97), 695 So.2d 953, converted a writ application to an appeal and ordered the Louisiana Fifth Circuit Court of Appeal to consider the appeal of a partial summary judgment.[7] The Supreme Court's decision remanding the case expressly recognized a litigant's right to appeal from a partial summary judgment. However, Justices Lemmon and Kimball clearly indicated in their dissents that the defendant was not being dismissed in full from the lawsuit as a result of the majority's action.
Several months later, the Fifth Circuit rendered its judgment in Douglass, which is not only preferable to,[8] but also instructive *599 on, the judgment which was issued earlier by this court on Eagle's motion for summary judgment:
Accordingly, LSA-R.S. 9:2797 is applicable and plaintiffs are barred by this statute from asserting claims of strict liability and breach of warranty of merchantability against Ochsner.... For the foregoing reasons, the granting of the partial summary judgment in favor of Ochsner is affirmed.
Douglass v. Alton Ochsner Medical Foundation, 96-777 (La.App. 5 Cir. 12/10/97), 704 So.2d 844, 848 (Emphasis added.).
The cited Douglass decisions are instructive in two ways: first, there is no impediment to a court granting a partial summary judgment rejecting a theory or theories of liability, and a party defendant not being dismissed from the proceeding; and, second, the terminology "claims" is used in this context interchangeably with "theories of recovery."
Moreover, prior to the Louisiana Fifth Circuit Court of Appeal's action in Douglass following the remand from the Supreme Court, the Louisiana Legislature codified a party's right to appeal from a partial summary judgment. Specifically, Louisiana Code of Civil Procedure article 966(E) was amended on July 1, 1997 to provide, in pertinent part: "A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case." (Emphasis added.).
Louisiana Code of Civil Procedure article 1915, like article 966(E), was amended by Acts 1997, No. 483. The consequence of the simultaneous amendments is that a partial summary judgment on a theory of liability issued by a court may or may not be an appealable "final judgment." It is indisputably clear that, for the judgment to constitute a "final judgment" so as to protect the litigants' rights to supervisory and appellate relief, a court must designate the judgment as a final judgment "... after an express determination that there is no just reason for delay." La. C.C.P. art. 1915(B)(1). "In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action ... and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties." La. C.C.P. art. 1915(B)(2) (Emphasis added.).[9]
The Louisiana Supreme Court provided further guidance to lower courts as to the proper disposition of judgments, final or otherwise. Specifically, in R.J. Messinger, Inc. v. Rosenblum, XXXX-XXXX, p. 13-14 (La.3/2/05), 894 So.2d 1113, 1122, the court held:
In order to assist the appellate court in its review of designated final judgments, the trial court should give explicit reasons, either oral or written, for its determination that there is no just reason for delay. However, if the trial court fails to do so, we find the appellate court cannot summarily dismiss the appeal. For purposes of judicial efficiency, we... hold the proper standard of review for an order designating a judgment as *600 final for appeal purposes when accompanied by explicit reasons is whether the trial court abused its discretion. If no reasons are given but some justification is apparent from the record, the appellate court should make a de novo determination of whether the certification was proper. Of course, if after the examination of the record the propriety of the certification is not apparent, the court of appeal may request a per curiam from the trial judge. Alternatively, the court of appeal could issue a rule to show cause to the parties requiring them to show what the appeal should not be dismissed for failure to comply with La. Code Civ. Proc. art.1915, when the propriety of the certification is not apparent and the trial court has failed to give reasons for its certification.
The problems once encountered with properly communicating when a trial court's judgment must be appealed are replicated in this matter. Had the trial court granted the motion for summary judgment and dismissed Eagle with prejudice, it is clear that an appeal would have been required under La. C.C.P. art. 1915(A)(1) and (3). The failure to take an appeal would have the effect of res judicata between the plaintiff and the dismissed (with prejudice only) defendant. Or had the trial court granted a motion for summary judgment on a theory of the case under La. C.C.P. art. 966(E), the plaintiff would know that an appeal was required only if the trial judge designated it as "final" under La. C.C.P. art. 1915(B)(1). However, even if the party against the 966(E) summary judgment was granted did not appeal, there would be no res judicata effect between the parties. It appears the only distinguishing legal effect between a party failing to appeal a 966(E) summary judgment which has been designated as final and a 966(E) summary judgment which has not been designated as final under La. C.C.P. art. 1915(B)(2) is that the party against whom the judgment is rendered is precluded from later appealing the preclusion of that issue at the point that there is "rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties." Res judicata, as a concept involving parties and causes of action, is not at all implicated.
When this court earlier reversed the trial court's interlocutory judgment denying summary judgment, its decree did not signal a final dismissal with prejudice of parties or even of a party's cause of action. The effect of such a decree must be that a party's failure to seek supervisory relief from the decree of an intermediate appellate court is simply that the party may not subsequently appeal the 966(E) theories of recovery upon rendition of the judgment which adjudicates all claims, rights and liabilities of all the parties.
It is quite obvious that the plaintiffs believed this court's earlier judgment was not dismissing its cause of action against Eagle and OneBeacon, which would of course require the successful invocation of rehearing or supervisory relief to avoid the res judicata effect of such a final summary judgment. Rather, the plaintiffs were willing to accept this court's decision that one of the theories of recovery was precluded by the "sophisticated user" defense, and allow the trial court to decide the remaining claims against Eagle and the other defendants in the litigation until a final appealable judgment was rendered.
I cannot emphasize too much that if this court intended to dismiss Eagle and One-Beacon with prejudice from this lawsuit, its earlier decision did not comport with the requirements of a judgment of dismissal: "A judgment of dismissal with or without prejudice shall be rendered and the effects thereof shall be regulated in accordance *601 with the provisions of [Louisiana Code of Civil Procedure] Articles 1671 through 1673." La. C.C.P. art. 1844 (Emphasis added.). Louisiana Code of Civil Procedure article 1673 provides, in pertinent part, that "[a] judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial. [Emphasis added.]" This court's earlier judgment on the motion for summary judgment used the term "claims", a term which as we have seen from the Louisiana Fifth Circuit's Douglass decision is sometimes used interchangeably with "theories of recovery." Therefore, the parties were unable to discern that this court's decision was an "absolute dismissal" of Eagle and OneBeacon. As a result, the plaintiffs were denied adequate notice that they were required to seek supervisory relief in the Supreme Court in order to preserve their rights to their remaining theories of recovery, including, but not limited to, unreasonably dangerous per se, and fraud. Based on these facts, the application of the principle of res judicata is inappropriate.
For the decree to have had the effect that the majority opinion attributes to it, it would have had to substantively read like this: "We reverse the trial court's denial of summary judgment, and, accordingly, there is judgment herein in favor of the defendant, Eagle and OneBeacon, and against the plaintiff, dismissing his suit against them with prejudice."
The majority's resolution of the instant appeal, on the basis that the ruling on the motion for summary judgment is a res judicata bar to a full and fair trial on those theories of recovery which ought to have survived the decision, is disconcerting insofar as it is a prime example of the undesirability and confusion of piecemeal appeals that Justice Kimball and former Justice Lemmon decried in their dissents in Douglass, supra, as well as that Justice Lemmon presaged in Everything On Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993). See also Tate and Norris, Summary Judgment and Partial Summary Judgment in Louisiana: The State We're In, 59 La. L.Rev. 131 (Fall 1998). In Everything On Wheels Subaru, Inc., the Louisiana Supreme Court noted there are several telling considerations, primary among them: "[u]nder modern rules of liberalized joinder of parties and of actions, it is critical to clarify when a partial disposition of the litigation must be appealed in order to prevent the decision from acquiring the authority of the thing adjudged." Id., 616 So.2d at 1241. This court in its earlier ruling on the motion for summary judgment did not clearly state that the plaintiffs had no viable "cause of action" against the defendants.[10] Such an omission was sought to be addressed in Everything On Wheels Subaru, Inc., since the Supreme Court intended to craft a protection to "... reduce the uncertainty for a litigant who would otherwise proceed at his risk in deciding whether to appeal or not to appeal from a judgment of questionable finality." Id., 616 So.2d at 1240.

Applicability of Law of the Case in Lieu of Res Judicata

The interpretation of this court's earlier judgment which I urge neither leaves the defendants unprotected nor does it result in arbitrary application of the procedural *602 rules. When articles 966(E) and 1915(B) were amended, there was no need to amend the law governing the principle of res judicata because it does not apply. The legal principle which applies when a summary judgment granting relief under 966(E), whether the summary judgment is designated as final or not under 1915(B), is the "law of the case".
"[T]he law of the case doctrine is the proper procedural principle, as opposed to res judicata, for describing the relationship between prior judgments by trial and appellate courts rendered within the same case." Bank One v. Velten, XXXX-XXXX, p. 6 (La.App. 4 Cir. 8/17/05), 917 So.2d 454, 459 (citing Posey v. Smith, 453 So.2d 1016 (La.App. 3 Cir.1984)).[11] It is "... a doctrine whereby an appellate court will not reconsider its prior rulings on an issue in a subsequent appeal in the same case." Roccaforte v. Nintendo of America, Inc., 05-239, p. 8 (La.App. 5 Cir. 11/29/05), 917 So.2d 1143, 1148 (Emphasis added.). "Generally, when an appellate court considers arguments made in supervisory writ applications or responses to such applications, the court's disposition on the issue considered usually becomes the `law of the case,' foreclosing relitigation of that issue either at the trial court on remand or in the appellate court on a later appeal." Tolis v. L.S.U. Board of Supervisors, 94-1444 (La. App. 4 Cir. 5/16/95), 655 So.2d 747, 751 (citing Easton v. Chevron Industries, Inc., 602 So.2d 1032, 1038 (La.App. 4th Cir. 1992)). "The `law of the case' doctrine applies to previous decisions on writ applications as well as full appellate proceedings." Roccaforte, supra.; See also Andry v. Murphy Oil, U.S.A., Inc., XXXX-XXXX, p. 18 (La.App. 4 Cir. 6/14/06), 935 So.2d 239, 251.
The law of the case doctrine, as opposed to the statutory provision of res judicata, is usually discretionary. Courts should apply the doctrine only when there is no obvious injustice or manifest error. Landry v. Blaise, 02-0822 (La.App. 4 Cir. 10/23/02), 829 So.2d 661, 664. However, the failure to appeal a trial court judgment which has been designated as final or the failure to seek supervisory relief from the granting of a supervisory writ which grants 966(E) relief ought to result in the mandatory application of the "law of the case" rule. Generally, "the law-of-the-case principle is not applied so as to prevent a higher court from examining the correctness of the ruling of the previous court." Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 331, 256 So.2d 105, 107 (1971). However, in that pre-1915(B) decision, there could have been no consideration of the effect of a failure to appeal either a 966(E) partial summary judgment designated as final or the failure to timely seek supervisory relief from the decision of an intermediate court overruling an interlocutory judgment denying a partial summary judgment. Nonetheless, whether the principle of the "law of the case" is applied discretionarily *603 or mandatorily under these facts, the prior decision of this court as to the "sophisticated user" defense certainly stands in this court and in the trial court. Alex v. Rayne Concrete Service, XXXX-XXXX (La.1/26/07), 951 So.2d 138, fn. 6 ("... when the court of appeal grants an application for supervisory writs and renders judgment, either peremptorily or after briefing and oral argument, the decision of the court will be the `law of the case' in subsequent proceedings in that matter.")
Applying these principles, when the plaintiffs failed to seek supervisory review of this court's granting of Eagle's writ application, the law of the case controls and the plaintiffs cannot ever appeal in this case or revisit the failure to warn "sophisticated user" defense. The other theories survive, however. Since the plaintiffs have not had the opportunity to pursue these claims, the trial court erred in failing to overrule the exception of res judicata.
The majority references plaintiffs' argument that, if the doctrine of res judicata is applicable to all of the claims against Eagle and OneBeacon, it would be a miscarriage of justice to apply the doctrine to deny the plaintiffs their day in court. In doing so, the majority recognizes the availability of the statutory exceptions to the res judicata doctrine articulated in La. R.S. 13:4232, but nevertheless finds no merit in the plaintiffs' underlying argument or the applicability of the exceptions. I address this contention in order to emphasize that I am not urging that the § 4232 res judicata exceptions apply to the facts. Rather, I conclude the doctrine of res judicata does not apply under the facts and, as such, the exceptions to the res judicata provision are not triggered. The "law of the case" is different doctrinally from res judicata. N.O. Redevelopment Auth. v. Lucas, 2002-2344, p. 14 (La.App. 4 Cir. 8/25/04), 881 So.2d 1246, 1255.
In order to support and justify its affirmation of the trial court's granting of the exception of res judicata, the majority opinion quite contradictorily engages in a sort of relitigation of the issue of causation which had been "pretermitted" in the earlier decision. The majority examines the other ground for Eagle's motion for summary judgment, which no court ever granted, and seems to conclude that Eagle would have prevailed on that ground, if only the prior panel had considered it. Of course, as I noted early in my dissent, had Eagle prevailed on the causation question, there would be no question that the litigation was terminated, and once that judgment became final, the effects of res judicata would obtain. However, to me it is logically inconsistent to apply the effect of res judicata by revisiting the other grounds for summary judgment for a decision which might have been, but never was rendered.
Ironically, however, Eagle and OneBeacon would not be precluded by my proposed disposition from re-urging in the trial court its motion for summary judgment on the issue of causation, because it is not controlled by the "law of the case" and the trial court's original judgment insofar as it denied summary judgment on that ground was merely interlocutory. La. C.C.P. art. 1841.
The correct interpretation of this court's earlier judgment on the motion for summary judgment allows the plaintiffs to pursue their remaining theories of recovery and the defendants could reassert their motion for summary judgment on the issue of causation, as well as other defenses. The only claims precluded from relitigation in either this court or the trial court are the ones that are defeated by the defense of "sophisticated user", which most assuredly *604 does not include unreasonably dangerous per se.

CONCLUSION
The earlier writ disposition on the motion for summary judgment, when read as a whole, did not dismiss any party with prejudice. The controlling law and jurisprudence compel the interpretation of this court's earlier ruling as a partial summary judgment disposing of only one of the plaintiffs' theories of recovery, resulting in a more just and equitable resolution. The plaintiffs' voluntary decision to not pursue supervisory relief from the Supreme Court cannot be justly construed as a final and irrevocable termination of their rights against Eagle and OneBeacon in this litigation.
Accordingly, I would reverse the trial court's judgment on the exceptions of res judicata and subject matter jurisdiction.
NOTES
[1] Mr. Benard passed away on September 26, 2006, and his statutory heirs were substituted as named Plaintiffs.
[2] Mr. Duhe's 1986 deposition merely establishes that Celotex may have purchased Eagle products at some point before the late 1950's. We fail to see how such could establish that Mr. Benard had substantial exposure to any Eagle product absent some formal evidence by a person that saw an Eagle product in the presence of Mr. Benard. It is well established that merely placing a defendant's product at a particular work site or establishing that the product was sold to the work site does not satisfy a plaintiff's burden of proving product identification under the law. See, e.g., Abadie, supra, pp. 89-90.
[1] The majority opinion inaccurately states at page 590 that Mr. Benard's claims against Eagle and OneBeacon were dismissed "with prejudice". The quoted words nowhere appear in the original decision.
[2] It may also be that the negligence claim, insofar as it would rely upon a failure to warn, would be one of the claims which have been lost to Mr. Benard.
[3] Eagle's insurer, OneBeacon Insurance Company, is also a party to the motion and to this appeal.
[4] The trial judge also denied a motion to strike on an evidentiary issue which, presumably, required a resolution in order to determine the first ground for summary judgment favorably to Eagle.
[5] In addition to the exception of res judicata, the defendants filed in the trial court a declinatory exception of lack of subject matter jurisdiction pursuant to La. C.C.P. art. 925(A)(6), which the court granted. In the instant appeal, the plaintiffs also assign as error the trial court's action on the exception of lack of subject matter jurisdiction. A reversal on the res judicata issue would ipso facto upset the trial court's ruling on the jurisdiction issue. Thus, my dissent herein encompasses my disagreement with the majority's affirmation of the trial court's disposition of the subject matter jurisdiction issue.
[6] In addition to all the Halphen theories of strict liability, the plaintiff urged negligence theories and fraud.
[7] In Douglass, the plaintiff filed suit alleging negligence and strict liability theories of recovery, but the trial court, among other things, granted partial summary judgment rejecting the strict liability theory. Ultimately, the plaintiff requested the Louisiana Fifth Circuit amend its prior writ denial relative to a partial summary judgment and treat his writ application as a motion and order for appeal. The Fifth Circuit denied the motion stating its earlier writ denial indicated the plaintiffs had a right to a regular appeal following final judgment.
[8] "Preferable", in the sense that, the language of the decree is clearer and does not result in any confusion, especially when considered in light of the earlier opinion rendered by the Supreme Court.
[9] Notably, Louisiana Code of Civil Procedure article 1915 is not expressly limited to judgments rendered by trial courts. Rather, it references "the court" or "a court" and, thus, encompasses appellate court rulings, such as the summary judgment writ disposition rendered earlier by this court that is at issue in these proceedings.
[10] The term "cause of action" is used here in the context of Everything on Wheels Subaru, Inc., 616 So.2d at 1238-1239: "There is only one cause of action (although several demands or theories of recovery may be asserted thereon) when the operative facts of one transaction or occurrence give rise to the plaintiff's right to assert the action against the defendant."
[11] Louisiana Revised Statute 13:4231 sets forth the circumstances for which the defense of res judicata may be raised. Essentially, it bars a second action when it arises out of the same transaction or occurrence which was the subject of the prior litigation. This provision often becomes misleading when one seeks to apply it to a judgment when there is more than one "theory" or "cause of action" at issue. The confusion likely stems from the legislative and jurisprudential changes in the law with partial summary judgments constituting final judgments. As a result of the Douglass decisions and the amendments to La. C.C.P. arts. 966 and 1915, a defendant can still remain a party litigant for remaining claims following a court's rendering of a final partial summary judgment as to less than all of the claims for recovery. Under such circumstances, the doctrine of res judicata is not applicable due to the failure to dismiss the defendant in full from the litigation.